UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANOEXA CORPORATION, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) 10 C 7177 ) ) Judge Feinerman |
| THE UNIVERSITY OF CHICAGO and UCHICAGO ARGONNE, LLC, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff NanoeXa Corporation brought this diversity action against The University of Chicago and UChicago Argonne, LLC (together, "Argonne"), alleging breach of contract, tortious interference with business relations, and defamation. Argonne has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7). The motion is granted in part, denied in part, and reserved in part.

**Background**

The facts alleged in the complaint are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Also pertinent at this stage are exhibits attached to the complaint, *see* Fed. R. Civ. P. 10(c); *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004), and documents "referred to" in the complaint and "central to [NanoeXa's] claim" that are attached as exhibits to Defendants' motion to dismiss, *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). In addition, orders entered and filings made

in this and other courts are properly subject to judicial notice. *See United States v. Stevens*, 500 F.3d 625, 628 n.4 (7th Cir. 2007).

NanoeXa is a "technology R&D enterprise" that commercializes scientific research related to, among other things, batteries. Doc. 1 at ¶ 3. Argonne is a scientific laboratory that developed and patented certain lithium-ion technologies used in batteries, cell phones, and other technological products.

On June 1, 2006, NanoeXa and Argonne entered into a Patent Option and License Agreement (Doc. 1-1) that granted NanoeXa nonexclusive rights to Argonne's lithium-ion technologies. Article 3.2 provides that Argonne grants NanoeXa "a nonexclusive right and license to make, have made, use, sell, and offer for sale Licensed Products and Licensed Services in the Field of Use in the Territory, with no right to sublicense." The agreement defines "Field of Use" as "Lithium Ion Batteries"; defines "Licensed Products" as "any and all products produced using Licensed Methods and/or any and all products made, used or sold within the scope of any claim of Licensed Patents"; defines "Licensed Services" as "any service offered or performed by [NanoeXa] wherein any Licensed Methods are used or practiced other than to produce a Licensed Product"; and provides that a "Sale" "occur[s] when Licensed Products or Licensed Services are provided to a third party for other than evaluation purposes." Agreement, art. 2.1, 2.5, 2.6, 2.7. Article 15 provides that Argonne "may immediately terminate this Agreement upon any attempt by [NanoeXa] to transfer its interest, in whole or in part, in this Agreement to any other party without the written permission of [Argonne]." Article 14.2 provides that either party may terminate the agreement if the other defaults or breaches.

Using Argonne's licensed technology, NanoeXa proceeded to develop and market lithium-ion electrode material, a component of lithium-ion batteries. In June 2009, Argonne

informed NanoeXa that its rights under the agreement were limited to manufacturing and selling actual lithium-ion batteries, and did not allow for the marketing or sale of lithium-ion electrode material. Doc. 1 at ¶ 29. At roughly the same time, Argonne contacted NanoeXa's prospective customers and told them "that NanoeXa did not have the right to sell the materials-related inventions described in detail in [Argonne's] Patents" and that NanoeXa lacked "a 'full license' to sell lithium-ion electrode material in the lithium-ion battery industry." *Id*. at ¶ 35. As a result, NanoeXa's relationships with prospective customers and distributors were severely damaged. *Id*. at ¶¶ 38, 40.

NanoeXa originally filed suit against Argonne in federal court in California. *NanoeXa v. Univ. of Chicago*, No. 10-CV-2631-LHK (N.D. Cal.). On August 2, 2010, while that suit was pending, Argonne terminated the agreement for what it perceived to be NanoeXa's improper transfer of its rights under the agreement to its joint venture partner, LICO Technology, and their joint venture, EnerQuest Corporation. *NanoeXa v. Univ. of Chicago*, 2010 WL 3398532, at *3 (N.D. Cal. Aug. 27, 2010); Doc. 1 at ¶ 25. The suit then was dismissed for lack of personal jurisdiction. *NanoeXa v. Univ. of Chicago*, 2010 WL 4236855 (N.D. Cal. Oct. 21, 2010).

NanoeXa filed the present action on November 5, 2010, two weeks after the California suit was dismissed. The complaint has four counts: (1) a request for a declaration that the license agreement grants NanoeXa the right to design, develop, improve, make, and sell lithium-ion electrode material, and not simply lithium ion batteries; (2) breach of contract; (3) tortious interference with business relations; and (4) defamation. Doc. 1 at ¶¶ 41-57. NanoeXa seeks a declaration, compensatory and punitive damages, fees, costs, and a permanent injunction barring Argonne from claiming that NanoeXa does not have the ability to develop and sell lithium-ion electrode material. *Id*. at 14-15.

**Discussion**

Argonne seeks to dismiss the complaint under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(7) for failure to join necessary and indispensable parties.

**I.      Rule 12(b)(6) Motion**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must overcome "two easy-to-clear hurdles":  (1) it "must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted).  Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted).  The court must "take the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in [plaintiff's] favor from those allegations." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

   **A.      Count I: Declaratory Judgment**

Count I seeks a declaration that "NanoeXa may exercise all of its rights under the License Agreement, including, without limitation, designing, developing, improving, making and selling the lithium-ion electrode material referenced in [Argonne's] patents."  Doc. 1 at ¶ 43. Argonne contends that Count I should be dismissed because the agreement unambiguously allows NanoeXa to use Argonne's technology *only* to develop, market, and sell completed lithium-ion batteries—and *not* to develop, market, and sell lithium-ion electrode material, a component of lithium-ion batteries.

The agreement is governed by Illinois law. Agreement, art. 19.3. Under Illinois law, "[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citation omitted). This is particularly true where, as here (Doc. 1-1 at 9), the contract includes an integration clause. *See Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 380 (7th Cir. 2000); *Sunstream Jet Express, Inc. v. Int'l Air Serv. Co., Ltd.*, 734 F.2d 1258, 1265 (7th Cir. 1984). When interpreting a contact, the court looks first to its text, and if the text is "facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety*, 706 N.E.2d at 884. "If, however, the trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present" and the court may look to extrinsic evidence. *Ibid.*; *see also Brooklyn Bagel Boys*, 212 F.3d at 380 ("Notwithstanding the parol evidence rule, extrinsic evidence can be admitted to discover the parties' genuine intent when a contract is ambiguous."). Appropriate extrinsic evidence includes industry custom, *see Doornbos Heating & Air Conditioning, Inc. v. James D. Schlenker, M.D., S.C.*, 932 N.E.2d 1073, 1092-94 (Ill. App. 2010), and the parties' course of dealing and course of performance, *see Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 67 (7th Cir. 1995) ("a 'course of dealing' or 'course of performance' can be used to flesh out an ambiguous or incomplete agreement").

The license agreement gives NanoeXa the right "to make, have made, use, sell, and offer for sale Licensed Products and Licensed Services in the Field of Use," and defines "Field of Use" as "Lithium Ion Batteries." Agreement, art. 2.1, 3.2. According to Argonne, "[t]he term

'Lithium Ion Batteries' defines a class of products, not an industry or zone of commerce," Doc. 20 at 5—that is, the term references fully manufactured batteries, not the battery industry writ large or battery components (*e.g.*, lithium-ion electrode material) used by businesses in the industry. From this premise, Argonne concludes that the agreement unambiguously does not give NanoeXa "the right to sell raw electrode material apart from its inclusion in batteries." *Id*. at 6 (emphasis deleted).

Argonne's interpretation, while eminently plausible, is not compelled by the agreement's text. The agreement's definition of "Field of Use" as "Lithium Ion Batteries" is reasonably susceptible to both Argonne's narrow interpretation (complete lithium ion batteries) and to NanoeXa's broad interpretation (complete batteries *and* components used by the industry in manufacturing such batteries). NanoeXa's view finds support in the agreement's expansive definition of "Licensed Products" as "*any and all* products produced using Licensed Methods and/or *any and all* products made, used or sold within the scope of any claim of Licensed Patents." Agreement, art. 2.5 (emphasis added). The term "products" in the phrase "any and all products produced using Licensed Methods" reasonably can be read as limited to fully-formed batteries, as Argonne maintains, or as including component parts of batteries, as NanoeXa maintains. *See Black's Law Dictionary* 1328 (9th ed. 2009) (defining "product" as "[s]omething that is distributed commercially for use *or* consumption and that is usu. (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption") (emphasis added).

In so holding, the court acknowledges that the district court in California, in denying NanoeXa's motion for a preliminary injunction, held that NanoeXa had not demonstrated a reasonable likelihood of success because the agreement "expressly limits Nanoexa to the

manufacture and sale of 'lithium ion batteries,' not the constituent components." *NanoeXa*, 2010 WL 3398532, at *4. The court did not support its statement with any analysis of the relevant contractual terms, which is to be expected given the posture of that case. *See Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 595 (7th Cir. 1985) ("although recognizing that the order granting such an injunction must set forth the judge's reasons, we also recognize that the haste with which the judge must act precludes as full a statement of reasons as could reasonably be demanded of a final decision") (citation omitted). More importantly, a view of the merits expressed by a court in granting or denying a preliminary injunction is, by its nature, tentative and preliminary, and thus does not foreclose that court (or any other court) from later taking a different view. *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1435 (7th Cir. 1986); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 264 (7th Cir. 1981).

Because the agreement is ambiguous with respect to the scope of the rights granted to NanoeXa, the declaratory judgment claim survives dismissal under Rule 12(b)(6). Proper interpretation of the agreement will require extrinsic evidence, which the parties may adduce in discovery and present at summary judgment and, if the case survives, at trial. *See Air Safety*, 706 N.E.2d at 884; *Marathon Plastics, Inc. v. Int'l Ins. Co.*, 514 N.E.2d 479, 486 (Ill. App. 1987) ("While usually the terms of a written agreement will be the only items considered in interpreting the agreement, in an ambiguous contract, custom and usage evidence is admissible. The court may also look at the interpretation which the parties have placed on the agreement as shown by their contemporaneous or subsequent acts or conduct.") (citations omitted), *overruled on other grounds by Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481 (Ill. 2001); *Brooklyn Bagel*, 212 F.3d at 380-81; *Sethness-Greenleaf*, 65 F.3d at 67; *see also McNally Tunneling Corp. v. City of Evanston, Ill.*, 2001 WL 1414437, at *3 (N.D. Ill. Nov. 13, 2001) ("Under Illinois

contract law, parties are permitted to use extrinsic evidence—including evidence of course of performance, course of dealing and industry-wide customs or trade usage—to clarify the meaning of ambiguous contract terms.").

### B. Count II: Breach of Contract

Under Illinois law, a plaintiff alleging breach of contract must show: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev.*, 592 F.3d at 764 (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)); *see also Roberts v. Adkins*, 921 N.E.2d 802, 810 (Ill. App. 2010). Count II alleges that "Argonne breached the License Agreement, including the duty of good faith and fair dealing implied in every contract, by attempting to unilaterally restrict NanoeXa's rights thereunder, including, without limitation, NanoeXa's ability to design, develop, improve, make, market and sell lithium-ion electrode material in the lithium-ion battery industry." Doc. 1 at ¶ 48. Argonne presses several grounds for dismissing Count II; two succeed, but only in part.

First, NanoeXa cannot pursue a freestanding claim for breach of the duty of good faith and fair dealing. That duty is implicit in every contract, *see Horowitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 946 (Ill. 2010), "requir[ing] a party vested with contractual discretion to exercise it reasonably, … [not] arbitrarily, capriciously, or in a manner inconsistent with reasonable expectations of parties," *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 793 (Ill. 2008). The duty, however, "is a rule of construction, not a stand-alone obligation." *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006); *see also Zeidler v. A & W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law."). It "creates neither a cause of action sounding in tort nor

its own *sui generis* cause of action." *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1106 (7th Cir. 1997). Count II therefore is dismissed with prejudice to the extent it is premised on an independent breach of the duty of good faith and fair dealing.

Second, the complaint fails to plead a contract claim premised on Argonne's alleged wrongful termination of the license agreement. The complaint references termination only twice, and briefly, alleging that "Argonne has breached the Licensed [sic] Agreement … by purporting to terminate the License Agreement in violation of its express terms," Doc. 1 at ¶ 33, and that "Argonne purported to terminate the License Agreement on August 2, 2010, and thereby breaching it," *id*. at ¶ 25. Although Rule 8(a) does not require a complaint to provide detailed factual allegations, mere conclusions or "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *Iqbal*, 129 S. Ct. at 1949. Because the complaint fails to provide *any* "factual enhancement" regarding the termination, NanoeXa's wrongful termination claim does not satisfy Rule 8(a). *See Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2009) (complaints cannot rely on "abstract recitations of the elements of a cause of action or conclusory legal statements"); *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (a complaint falls "drastically short" when it "fails to allege any facts that even remotely relate to this theory"). Count II accordingly is dismissed without prejudice to the extent it challenges Argonne's termination of the license agreement.[*]

---

[*] Argonne contends that NanoeXa judicially admitted in the California case that it transferred its rights under the agreement to LICO, its joint venture partner, and EnerQuest, the joint venture. Doc. 25 at 5. That admission, Argonne maintains, gave it the unfettered right under Article 15, quoted earlier, to terminate the agreement. Argonne reads too much into NanoeXa's California pleadings, which acknowledge that NanoeXa formed a joint venture with LICO, but which expressly state that NanoeXa "did not transfer or attempt to transfer any of its rights under the License Agreement to either LICO or EnerQuest." Doc. 20-9 at ¶ 57.

Argonne's remaining challenges to Count II are without merit. Argonne contends that "NanoeXa fails to allege a claim for breach of contract under Illinois law because the Complaint's allegations rely on the legally unsupportable premise that the License Agreement is not restricted to 'Lithium Ion Batteries.'" Doc. 20 at 9. That argument fails for the reasons set forth above—the agreement does not provide unambiguously, one way or the other, whether NanoeXa's rights are limited to manufacturing and selling complete lithium ion batteries or also include manufacturing and selling lithium-ion electrode material.

Argonne also contends that NanoeXa has failed to "adequately plead the substantial performance and breach elements" of its contract claim. Doc. 25 at 3. The contention is incorrect. The complaint alleges that NanoeXa "performed and complied with all of its obligations under the License Agreement, including making all required payments," Doc. 1 at ¶ 24; a complaint need not list the plaintiff's every contractual obligation and allege that each has been substantially performed. *See Petri v. Gatlin*, 997 F. Supp. 956, 966 (N.D. Ill. 1997). The complaint also alleges that Argonne breached the agreement by attempting to improperly restrict the scope of NanoeXa's rights thereunder. Doc. 1 at ¶¶ 29-33, 48. These allegations satisfy NanoeXa's Rule 8(a) obligations with respect to that portion of its contract claim.

In summary, Count II is dismissed with prejudice to the extent it purports to state an independent claim under the duty of good faith and fair dealing, and is dismissed without prejudice to the extent it challenges Argonne's termination of the agreement. Count II survives in all other respects.

### C. Counts III-IV: Tortious Interference with Business Relations and Defamation

Count III alleges that Argonne tortiously interfered with NanoeXa's business relationships with potential purchasers of NanoeXa-manufactured lithium-ion electrode material by falsely claiming that NanoeXa did not have a "full license" to sell that material. Count IV, which sounds in defamation, alleges from the same factual predicate that Argonne knowingly made false statements in an effort to maximize its own control of the commercially valuable lithium-ion technology and to harm NanoeXa. To establish tortious interference with a business relationship, the plaintiff must prove that "(1) the plaintiff has a reasonable expectancy of entering into a business relationship; (2) the defendant knows of the expectancy; (3) the defendant interferes and prevents the realization of the business relationship; and (4) the defendant's interference actually damages the plaintiff." *Alpha Sch. Bus Co., Inc. v. Wagner*, 910 N.E.2d 1134, 1157-58 (Ill. App. 2009); *see also Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009). To establish defamation, a plaintiff must prove "that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006); *see also Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009).

Argonne contends that Counts III and IV should be dismissed because the statements underlying both claims—that NanoeXa did not have a "full license" to sell electrode materials—were truthful and thus cannot create liability for tortious interference and defamation. According to Argonne, because "the unambiguous License Agreement expressly limits NanoeXa's rights to the manufacture and sale of lithium ion batteries, not … electrode material,"

NanoeXa "necessarily does not have a 'full license.'" Doc. 20 at 13. As discussed above, however, the agreement does not unambiguously limit NanoeXa's rights to the manufacture and sale of lithium-ion batteries. And while Argonne also contends that its statements are capable of an innocent construction, given that NanoeXa's license literally was "limited" to a particular field of use even on NanoeXa's reading, the complaint alleges that Argonne's statements were intended to and clearly did convey that NanoeXa's sale of lithium ion electrode material violated of the agreement. *See Gibson v. Philip Morris, Inc.*, 685 N.E.2d 638, 644 (Ill. App. 1997). At the pleading stage, therefore, NanoeXa's allegations regarding Argonne's statements to NanoeXa's prospective customers are sufficient to support the tortious interference and defamation claims.

Argonne cites *Bass v. SMG, Inc.*, 765 N.E.2d 1079 (Ill. App. 2002), for the proposition that it cannot have tortiously interfered with business expectancies of NanoeXa that touch on the license agreement. This is wrong. The *Bass* plaintiffs, through a contract with defendant SMG, introduced a lucrative client to SMG and served as SMG's exclusive sales representative, and in return were paid a commission on goods SMG sold to that client. *Id*. at 1082. After SMG breached the contact and struck a deal directly with the client, the plaintiffs sued for tortious interference, arguing that SMG had interfered with their expectation that SMG would continue to pay commissions. *Id*. at 1089. The court rejected the claim, explaining that "just as a party cannot tortiously interfere with its own contract, likewise a party cannot tortiously interfere with the business expectancy that it created by that contract." *Ibid*. Here, by contrast, the complaint alleges that Argonne interfered not with NanoeXa's expectations under the license agreement, but with *other* contracts NanoeXa hoped to forge with prospective clients and distributors, all strangers to the license agreement. Because Argonne is a third party to the relationships from

which NanoeXa derived its business expectancies, *Bass* is inapposite. *See Graves v. Man Grp. USA, Inc.*, 479 F. Supp. 2d 850, 855-56 (N.D. Ill. 2007) (distinguishing *Bass* and allowing tortious interference claim to proceed where "it is at least conceivable that [plaintiff] will be able to establish that he had an independent relationship with [the third party] with which [defendant] tortiously interfered").

Finally, Argonne contends that NanoeXa's tortious interference and defamation claims are preempted by federal patent law. Doc. 25 at 6. The argument, having been raised for the first time in Argonne's reply brief and consisting of a single sentence, is doubly forfeited. *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 382 (7th Cir. 2011) ("[W]e see no need to dwell on this point. The easy response is that Unitrin waited too long to raise the argument, since it introduced it only in its reply brief in the district court."); *Milanouic v. Holder*, 591 F.3d 566, 572 (7th Cir. 2010); *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006) ("arguments made for the first time in a reply brief are waived"); *Martinez v. Sun*, 2010 WL 2330368, at *6 (N.D. Ill. June 8, 2010). Argonne may press this argument in the future if it chooses.

## II. Rule 12(b)(7)

Argonne contends that the complaint should be dismissed under Rule 12(b)(7) for failure to join three parties under Rule 19: (1) Decktron, a company that in July 2006 was granted rights under the license agreement; (2) LICO, NanoeXa's joint venture partner; and (3) EnerQuest, the joint venture formed by LICO and NanoeXa. In ruling on a Rule 12(b)(7) motion, the court must accept the allegations of the complaint as true, but also may consider evidence outside the pleadings. *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479-80 (7th Cir. 2001).

Analysis under Rule 19 is bifurcated. First, the court determines under Rule 19(a) whether a "person" is necessary—or, in the Rule's terms, whether the person is "required to be joined if feasible." A person is necessary if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a); *see Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999). Second, if a person is necessary under Rule 19(a) but cannot be joined, the court must determine under Rule 19(b) whether the person is indispensable—or, in the Rule's terms, "whether, in equity and good conscience, the action should proceed among the existing parties" without the necessary person or entity "or should be dismissed." Fed. R. Civ. P. 19(b); *see also Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). The defendant bears the burden of demonstrating that the absent person must be joined. *See Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981); *Vasarhelyi v. Rojas*, 2010 WL 737589, at *5 (N.D. Ill. Feb. 26, 2010); 5C Wright, Miller & Kane, Federal Practice and Procedure § 1359, at 67 (2010) ("The cases make it clear that the burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence.").

Argonne says very little about EnerQuest and LICO, and for good reason. Because neither is a party to the license agreement or has rights or obligations under the agreement, neither is a necessary party. *See Davis*, 268 F.3d at 481-85; *Northrop Corp. v. McDonnell*

*Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983); *Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 937 (N.D. Ill. 2006); *Grubb & Ellis Co. v. Huntington Hoffman, LLC*, 2010 WL 4962846, at *4 (N.D. Ill. Dec. 1, 2010) (collecting cases and noting that "[c]ourts have accordingly been reluctant to require joinder of an absent party that does not have any rights under the agreement that is at issue in the dispute").

Decktron, by contrast, is a party to the license agreement—a July 2006 amendment provides that "the term 'Licensee' shall include reference to Decktron. Decktron shall share in, and be subject to, the associated rights and responsibilities of the Licensee under the Agreement." Doc. 20-4 at 2. The Seventh Circuit has held that "'a contracting party is the paradigm of an indispensable party.'" *Davis*, 268 F.3d at 484 (quoting *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996)); *see also Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D. 125, 127-28 (N.D. Ill. 2003). Indeed, where the absent persons are "joint obligees"—meaning parties to whom the defendant owes certain performances under the contract—they "usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action." 7 Wright, Miller & Kane, *supra*, § 1613, at 181 (collecting cases); *see also FDIC v. Success Title Servs., Inc.*, 2010 WL 3385519, at *3 (N.D. Ill. Aug. 24, 2010) ("the parties to a contract are deemed indispensable in litigation arising from that contract"); *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 2009 WL 427280, at *11 n.24 (S.D.N.Y. Feb. 23, 2009) ("where the absent party is a joint obligee rather than a joint obligor, the courts will dismiss on indispensability grounds, because the absent party could bring a separate action, subjecting the obligors to double liability on the same claim"); *Elmhurst Consulting*, 219 F.R.D. at 127-128; *Cigna HealthCare of St. Louis, Inc. v. Kaiser*, 181 F. Supp. 2d 914, 920 (N.D. Ill. 2002).

NanoeXa's only response is that Decktron has not expressed an interest in litigating Argonne's alleged breach of the agreement. That may be so, but if Decktron changes its mind, it might not be prohibited from suing Argonne at some point in the future, even if Argonne prevails over NanoeXa in this case. *See Errico v. Stryker Corp.*, 2010 WL 5174361, at *3 (S.D.N.Y. Dec. 14, 2010) (where individuals were parties to the disputed contract but were not joined, they "may not be bound by *res judicata* and could commence another action against [the defendant] arising from the same facts and circumstances alleged in this lawsuit") (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.")). So, NanoeXa's response does not speak to whether Decktron is a necessary and indispensable party under Rule 19.

At last week's status hearing, the parties agreed that Decktron is a citizen of South Korea, which means that joining Decktron would not destroy diversity jurisdiction. However, NanoeXa indicated that Decktron no longer exists, and Argonne responded that the Rule 19 issue would be mooted if Decktron were truly and irrevocably defunct. The parties should be prepared to address Decktron's status at the next status hearing. If Decktron is not irrevocably defunct, the court will ask NanoeXa whether Decktron is willing to join this lawsuit voluntarily and, if not, whether Decktron should be involuntarily joined under Rule 19(a)(2). *See* Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff."); *see also Errico*, 2010 WL 5174361, at *5 (contract case); *Impact Gel Corp. v. Rodeen*, 2005 WL 2122122, at *3 (W.D. Wis. Sept. 1, 2006) ("Traditionally, a 'proper case' is one in which the involuntary plaintiff is outside the court's jurisdiction and is

under some obligation to join the plaintiff's lawsuit but has refused to do so."); 7 Wright, Miller & Kane, *supra*, § 1613, at 182 ("Since it typically is in the interest of the obligees to join in the enforcement of their common right, this requirement does not impose any hardship, especially in light of the court's power to join an absent person as an involuntary plaintiff.").

**Conclusion**

Argonne's Rule 12(b)(6) motion is granted in part and denied in part. Count II is dismissed with prejudice to the extent it is premised on an independent breach of the duty of good faith and fair dealing, and is dismissed without prejudice to the extent it is premised on an improper termination of the license agreement. NanoeXa may file an amended complaint, no later than April 27, 2011, repleading the wrongful termination component of its contract claim. Argonne's Rule 12(b)(7) motion is denied in part (as to LICO and EnerQuest) and reserved in part (as to Decktron).

April 13, 2011

United States District Judge